DA 06-0661

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 405

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

TONYA SADOWSKY,

        Defendant and Appellant.

APPEAL FROM:     District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-2005-201
Honorable Douglas G. Harkin, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

           Scott B. Spencer, Office of the Public Defender, Missoula, Montana

        For Appellee:

           Hon. Mike McGrath, Montana Attorney General, Sheri K. Sprigg,
Assistant Attorney General, Helena, Montana

           Fred Van Valkenburg, Missoula County Attorney, Dale R. Mrkich,
Deputy County Attorney, Missoula, Montana

Submitted on Briefs:  February 20, 2008

Decided:  December 2, 2008

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1     Tonya Michelle Sadowsky (Sadowsky) entered a plea of guilty to the offense of theft in a common scheme in the Fourth Judicial District Court, Missoula County.  The District Court sentenced Sadowsky to a term of six years, all deferred, and imposed numerous conditions.  Sadowsky now appeals the imposition of several of those conditions.

¶2     Sadowsky's appeal presents the following issue:

¶3     Did the District Court err in imposing the conditions of no bars, drugs, alcohol, or gambling, attendance at AA/NA, and a chemical dependency evaluation?

## BACKGROUND

¶4     The State charged Sadowsky with theft, a felony, which took place during her three-month period as a manager of the Sleep Inn motel in Missoula.  Sadowsky used a variety of deceptive practices to obtain both money and services for herself and others.  The State alleged that Sadowsky had taken money by not depositing cash, by manipulating a "direct billing" plan, and by keeping cash proceeds from the sale of surplus property.  Sadowsky also allegedly rented rooms to friends and family without charging them.

¶5     Pursuant to a plea agreement, Sadowsky pled guilty to the offense of theft in a common scheme on September 6, 2005.  The plea agreement provided that the State would recommend that the court "determine if a no alcohol/no bars provision should be imposed."  The plea agreement also required a "testing clause for alcohol or drugs."  The court ordered a pre-sentence investigation report (PSI).

2

¶6    The State Department of Corrections Adult Probation and Parole completed the PSI and submitted it to the court on October 13, 2005. Sadowsky admitted in the PSI to drinking socially on occasion and also to past methamphetamine use. Sadowsky claimed, however, that she had stopped using drugs before she moved to Missoula. The PSI also noted that Sadowsky maintained that neither alcohol, nor drugs, was a factor in the commission of the current crime. The PSI recommended, however, that Sadowsky "not be allowed to be in bars or use alcohol."

¶7    The PSI cited the large amount of restitution owed by Sadowsky and recommended that any money that Sadowsky had for socializing be put toward her restitution obligation. The PSI also cast doubt on Sadowsky's claim of being drug free. In fact, the PSI recommended that Sadowsky obtain a chemical dependency evaluation if deemed necessary by her probation officer. The PSI suggested that a drug test at the start of her probation should be the first step in that evaluation. The PSI also noted concern with Sadowsky's lack of any tangible explanation for why she had taken the money other than she was "short of money" and suggested a conflict with that assertion and Sadowsky's statement that she had quit using drugs a few months before moving to Missoula.

¶8    The PSI concludes by concurring with the plea agreement on the issue of drugs and alcohol:

> 14. The Defendant shall obtain a chemical dependency evaluation by a state approved treatment provider/facility, at her own expense, and follow all recommendations of said evaluation, if recommended by supervising Probation Officer.

3

15. The Defendant shall not posses, use/drink intoxicants/alcohol, nor will she enter any place intoxicants are the chief item of sale, to include all bars and casinos. She will submit to Breathalyzer testing or bodily fluid testing for drugs or alcohol as requested by her supervising officer, on a random or routine basis.

16. The defendant shall attend AA/NA at the discretion of her Probation Officer.

.   .   .

18. The Defendant will not enter any casinos or play any games of chance.

¶9 The District Court agreed with the PSI's recommended conditions. The court left it to the probation officer's discretion whether to impose the no alcohol restriction. The probation officer could remove the no alcohol provision if the officer was satisfied that allowing Sadowsky to drink alcohol and be in bars would not present any danger of Sadowsky violating her probation. Sadowsky did not mention, let alone object, to the provisions regarding gambling, AA/NA attendance or the chemical dependency evaluation at the sentencing hearing.

## STANDARD OF REVIEW

¶10 We review probation conditions under a dual standard of review: we first review de novo the legality of the probation conditions; we then review the conditions' reasonableness for abuse of discretion. *State v. Stiles*, 2008 MT 390, ¶ 7, ___ Mont. ___, ¶ 7, ___ P.3d ___, ¶ 7; *State v. Brotherton*, 2008 MT 119, ¶ 10, 342 Mont. 511, ¶ 10, 182 P.3d 88, ¶ 10; *State v. Ashby*, 2008 MT 83, ¶ 9, 342 Mont. 187, ¶ 9, 179 P.3d 1164, ¶ 9.

## DISCUSSION

4

¶11    *Did the District Court err in imposing the conditions of no bars, drugs, alcohol, or gambling, attendance at AA/NA, and a chemical dependency evaluation?*

¶12    We first address the District Court's order prohibiting Sadowsky from gambling, attending AA/NA, and requiring a chemical dependency evaluation. Section 46-18-201(4)(o), MCA, allows for a sentencing judge, on deferral of a sentence, to impose upon the offender any reasonable restrictions or conditions during the period of the deferred imposition or suspension of sentence. These conditions include any other reasonable restrictions or conditions considered necessary for rehabilitation or for the protection of the victim or society.

¶13    In *Ashby*, the Court warned that a defendant's failure to object to an improper condition at or before sentencing "may result in a waiver." *Ashby,* ¶ 22. The record shows that Sadowsky did not object to any conditions, other than the no alcohol/no bars, at the sentencing hearing. Sadowsky raises the issues of gambling, attending AA/NA, and the chemical dependency evaluation for the first time in her appeal. Sadowsky asserts that all the suspect conditions are related to alcohol. A reading of the PSI reveals, however, that the probation officer had multiple concerns about Sadowsky's past history, not just a concern of alcohol. As these conditions fall within statutory parameters set forth in § 46-18-201(4)(c), MCA, and Sadowsky failed to object to these conditions at the District Court, we refuse to address them for the first time on appeal. *Stiles*, ¶ 11.

¶14    We next deal with the no alcohol/no bars provision. Sadowsky properly objected to this condition at her sentencing hearing. Sadowsky argued that this provision did not apply because her crime did not involve drinking. We stated in *Ashby* that a court may

5

require a particular condition of probation so long as the condition "has a nexus to either the offense for which the offender is being sentenced, or to the offender himself or herself." *Ashby*, ¶ 15.

¶15 The PSI revealed that Sadowsky used methamphetamine on a weekly basis for over 10 years. The area director who oversees the Sleep Inn wrote a letter, which was attached to the PSI, claiming Sadowsky admitted she stole the money to supply a drug problem. Sadowsky maintains that she had quit using before moving to Missoula, but the PSI cast doubt on Sadowsky's claim that she had been able to quit without treatment. Sadowsky also admitted that she had started drinking in high school, but maintains that she drinks only socially at this time. Sadowsky's father reported the family had been "floored" when they learned of Sadowsky's offense, and furthermore when Sadowsky told them she had been using methamphetamine since the age of 18.

¶16 The PSI further documented Sadowsky's history of substance usage. We recently held the revelation of a history of chemical dependency represents a sufficient offender nexus to support a no alcohol condition. *State v. Winkel*, 2008 MT 89, ¶¶ 15-16, 342 Mont. 267, ¶¶ 15-16, 182 P.3d 54, ¶¶ 15-16. Although Sadowsky's current crime did not include alcohol directly, the PSI established a sufficient nexus between past substance abuse by Sadowsky and the no alcohol requirement. *Ashby*, ¶ 15; *Winkel*, ¶¶ 15-16.

¶17 Affirmed.

/S/ JOHN WARNER

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS